UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM A. CAMPANA, and LINDA CAMPANA, | ) Case No. 1:22-cv-00075 |
| Plaintiffs, | ) Judge J. Philip Calabrese ) |
| v. | ) ) |
| KAMAN & CUSIMANO, *et al.*, | ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

*Pro se* Plaintiffs William A. Campana and Linda Campana, as United States Citizens, Successor Trustee and Secretary/Treasurer for Reserve Domiciles, LTD., W/Phoenix Diversified & Shimoda Trust and the Weelzaway Trust, filed this action against the law firm of Kaman & Cusimano and ten of its attorneys, the law firm of Milligan Pusateri Co., LPA and its attorney Kimberly K. Wyss, Attorney A. Clifford Thornton, Jr., Summit County Court of Common Pleas Magistrate Kandi S. O'Connor, Summit County Common Pleas Court Judge Thomas A. Teodosio, Continental Management Company, Former Property Manager Amanda Harland, former Property Manager Lorrie Docharty, Cedar Property Management Co., and current Property Manager Larry Cedar.

The Campanas contest a foreclosure action filed in the Summit County Court of Common Pleas against Reserve Domiciles, Ltd pertaining to the condominium located at 3011 Waterford Drive, Twinsburg, Ohio 44087. Plaintiffs currently reside in the condominium and are the Trustee, Successor Trustee and Secretary/Treasurer

for Reserve Domiciles, Ltd. They ask this Court to exercise appellate review over the State court foreclosure judgment under the Supremacy Clause and the Uniform Commercial Code, reverse the judgment and issue a new judgment in their favor. The Campanas also filed a Motion for Temporary Restraining Order (ECF No. 3) seeking to enjoin the State court proceedings until this Court has granted a new judgment. For the reasons more fully explained below, the Court **DENIES** that motion and **DISMISSES** this action for lack of subject matter jurisdiction.

The Campanas also filed a Motion to Proceed *In Forma Pauperis* (ECF No. 2). That Court **GRANTS** that motion.

### FACTUAL AND PROCEDURAL BACKGROUND

The foreclosure action in question arose out of a dispute between Waterford Pointe Condominium Association ("Waterford Pointe"), located in Twinsburg, Ohio, and one of its members and unit owners, Reserve Domiciles, Ltd. ("Reserve"). Reserve, a corporation, is the Trustee for Phoenix Diversified and Shimoda ("Phoenix Diversified"), which is a Delaware Trust. Reserve, in its capacity as Trustee, purchased one of the units in Waterford Pointe in 1998, becoming subject to the terms and conditions of Waterford Pointe's declaration and bylaws. Pursuant to those bylaws, members are required to pay monthly assessments determined by Waterford Pointe's board of directors.

In 2005, the board of directors amended the bylaws in accordance with Section 5311.18(A)(2) of the Ohio Revised Code, stating that Waterford Pointe would credit payments made by unit owners in the following order:

> (a) First, to interest owed to Waterford Pointe;
>
> (b) Second, to administrative late fees owed to Waterford Pointe;
>
> (c) Third, to collection costs and legal fees incurred by Waterford Pointe; and
>
> (d) Fourth, to principal amounts the unit owner owes to Waterford Pointe for common expenses or penalty assessments chargeable against the unit.

In 2007, Waterford Pointe approved a revised collection policy stating that monthly assessments are due on the first day of each month and are deemed late if not postmarked by the fifteenth day of each month. Members who fail to pay their monthly assessments on time are assessed an administrative late fee of $25.00 per month.

Upon receiving its monthly invoice for maintenance fees, Reserve consistently tendered a check containing the following language: "Tendered for maintenance fee (MONTH, YEAR), only, not for any other purpose, 3011 Waterford." From January 2009 through June 2012, Reserve was late in paying its monthly assessment on a limited number of occasions. During that period, Waterford Pointe accepted and cashed Reserve's checks containing the aforementioned language without objection.

In 2012, the monthly assessment for members was $302.79. Reserve failed to make a timely payment for its monthly assessment in April of 2012, and its account became delinquent at that time. Reserve made a payment in May 2012 that appears to have been sufficient to cover the amount of the monthly assessments for April and May but did not cover the $25.00 late fee assessed in April. In accordance with the order of priority set forth in the bylaws, Waterford Pointe applied the partial payment

3

first against the $25.00 administrative late fee, then to the outstanding April assessment and, finally to the principal due for the May 2012 assessment. This resulted in an unpaid principal balance due for the May assessment in the amount of $25.00.

Waterford Pointe levied a June assessment on the account in the amount of $327.79, which was the monthly maintenance fee of $302.79 and the unpaid principal from May of $25.00. Reserve tendered a check in June for $302.79, ignoring the $25.00 owed for May. That check included the language, "Tendered for June 2012 maintenance fee only, not for late fees or any other purpose, for 3011 Waterford." Waterford Pointe received the check but returned it to Reserve with a letter that indicated it could not accept payments that include qualifying endorsements or restrictions. Waterford Pointe instructed Reserve to tender the full payment without the qualifying language. Reserve did not do so.

In July 2012, Reserve's balance increased to $655.58, encompassing the carry-over balance from May 2012, June's monthly assessment, June's administrative late fee, as well as the monthly assessment for July 2012. Reserve tendered a check specifically for the July monthly assessment that contained restrictive language specifying that the check was for the maintenance fee only. Waterford Pointe's property manager returned the check with a letter that explained the order of priority for allocating payments and included copies of Waterford Pointe's collections policy. Waterford instructed Reserve to tender a new check without the qualifying language. Reserve did not do so.

4

In August 2012, Reserve again tendered a check in the amount of $302.79 that included the restrictive language. Waterford Pointe again returned the check and advised Reserve that it would continue to return checks that included restrictive language. Further, Waterford Pointe informed Reserve that it needed to bring the amount current—by then, Reserve's delinquency was $1009.37. Waterford Pointe's attorney began to send Reserve collection letters.

This pattern repeated over the ensuing months, and Reserve's delinquency continued to increase. Waterford Pointe' s attorney repeatedly sent letters encouraging Reserve to bring the amount current. Reserve continued to tender checks with restrictive language for only the amount of the monthly assessment and Waterford Pointe continued to return them. Several times during 2013 and 2014, Waterford Pointe offered to waive late fees and legal costs if Reserve tendered a check without restrictive language to cover all of the delinquent assessments. They warned, however, that they would file a lien against the property if Reserve did not bring its account current. Reserve refused the offer to settle, and Waterford Pointe recorded a lien on Reserve's property in September 2014.

Waterford Pointe filed a foreclosure complaint against Reserve in the Summit County Court of Common Pleas on January 30, 2015. Reserve responded with an answer generally denying the allegations in the complaint and asserted counterclaims for breach of contract, slander of title, fraud, and violation of the contract clauses in the federal and Ohio Constitutions. Waterford Pointe filed a motion for summary judgment that was ultimately denied. The trial court issued an

order bifurcating the issues before the court and conducted a bench trial on the issue of the validity and/or discharge of the lien. Further, the trial court noted that once the status of the lien had been determined, it would address any remaining causes of action. Ultimately, the parties entered into joint stipulations of facts and submitted joint exhibits. On March 10, 2017, a magistrate issued a decision with findings of fact and conclusions of law granting judgment in favor of Waterford Pointe. Reserve filed objections to the magistrate's decision. On July 27, 2017, the State trial court overruled Reserve's objections and adopted the magistrate's decision. The trial court issued a final decree of foreclosure on August 15, 2017.

Reserve appealed that decision to the Ohio Court of Appeals. That court upheld the decision of the trial court, determining specifically that Reserve was bound by the terms and conditions of the condominium association's bylaws and Waterford Pointe was not obligated to accept and cash Reserve's checks tendered after April 2012 that contained restrictive language in contravention of the order of priority set forth in the bylaws.

The property was sold at sheriff's sale, and the State trial court confirmed the sale on July 21, 2021. The purchaser of the property was the Weelzaway Trust ("Weelzaway"), which coincidentally also has William A. Campana as the Trustee. Weelzaway put down a $ 10,000.00 deposit at the sheriff's sale, but failed to pay the balance of the purchase price. The action is still pending in the State trial court.

The Campanas have now filed this action asking the Court to intervene in the State court action and to enjoin it from continuing to conduct its proceedings. In

addition, they claim the foreclosure violated their constitutional rights, although they do not elaborate on which rights they believe were violated, and ask the Court to overturn the judgment under the authority of the Supremacy Clause. Finally, they ask this Court to issue judgment in their favor.

## GOVERNING LEGAL STANDARD

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-

7

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## ANALYSIS

The Campanas ask the Court to grant them a temporary restraining order that would enjoin the State court from proceeding to resolve issues that arose with the sheriff's sale of the property. The Court cannot grant that relief. A federal court cannot interfere with pending State court proceedings involving important State interests unless extraordinary circumstances are present. *See Younger v. Harris*, 401 U.S. 37, 44–45 (1971). When a person is the target of an ongoing State action involving important State matters, he or she cannot interfere with the pending State action by maintaining a parallel federal suit involving claims that could have been raised in the State case. *Watts v. Burkhart*, 854 F.2d 839, 844–48 (6th Cir.1988).

If the State defendant files such a case, *Younger* abstention requires the federal court to defer to the State proceeding. *Id*; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) State proceedings are on-going; (2) the State proceedings implicate important State interests; and (3) the State proceedings afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Abstention is mandated whether the State court proceeding is

criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the state." *Younger*, 401 U.S. at 44.

All three factors supporting abstention are present here. The foreclosure action is still pending, and the Court acknowledges that State foreclosure actions are matters are of paramount State interest. *See Doscher v. Menifee Cir. Ct.*, 75 F. App'x 996, 997 (6th Cir. 2003) (affirming dismissal based on principles of *Younger* abstention where the plaintiff challenged a State-court foreclosure action). The third requirement of *Younger* is that the Campanas must have an opportunity to assert their federal challenges in the State court proceeding. The pertinent inquiry is whether the State proceedings afford an adequate opportunity to raise the federal claims. *Moore v. Sims*, 442 U.S. 415, 430 (1979). At this point, the Campanas bear the burden to demonstrate that State procedural law bars presentation of their federal claims. *Pennzoil Co.*, 481 U.S. at 14. Where a plaintiff has not attempted to present his federal claims in the State court proceedings, the federal court should assume that State procedures will afford an adequate remedy, in the absence of "unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15.

Here, a trust holds the property. The Campanas are officers of the trust. Although they cannot proceed *pro* se with the presentation of these issues, they can retain counsel to present them in State court. The Campanas have not shown that they were barred from presenting these issues in the State action. The requirements of *Younger* are satisfied, and the Court must abstain from interfering in the pending

State action. Therefore, the Court **DENIES** the motion for a temporary restraining order (ECF No. 3).

Moreover, it is not clear that the Campanas have standing to bring the claims in this action. They seek to vacate the judgment in the State court foreclosure action based on alleged errors of law and fact the magistrate and judge made. Also, they also that the counterclaims offered in the State court had merit, in that payments were made on the monthly maintenance fees and refused. The Campanas, however, neither owned the property nor were parties to the State court action. The property was owned by Reserve (a corporate entity) as Trustee for Phoenix Diversified and Shimoda (a Delaware Trust). Reserve was the defendant in the action. The Campanas lack standing as individuals to raise claims pertaining to the property or to the State court action.

A party must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985). The fact that the Campanas may be collaterally affected by the adjudication of another's rights does not necessarily extend the Court's Article III powers to them. *Allstate Ins.*, 760 F.2d at 692.

The Campanas cannot file this action on behalf of Reserve as *pro se* litigants. A corporation may appear in the federal courts only through licensed counsel. *Rowland v. California Men's Colony Unit II Men's Advisory*, 506 U.S. 194, 201 (1993).

The Campanas are not licensed attorneys. They cannot represent Reserve in this Court or file pleadings on their behalf.

Further, the Court lacks subject matter jurisdiction to overturn a State-court judgment. Federal courts do not have jurisdiction to overturn State court decisions, even if the request to reverse the State court judgment is based on an allegation that the State court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Federal appellate review of State court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the *Rooker-Feldman* Doctrine, a party losing his case in State court is barred from seeking what in substance would be appellate review of the State judgment in a federal district court based on the party's claim that the State judgment itself violates his federal rights. *Berry v. Schmitt*, 688 F.3d 290, 298–99 (6th Cir. 2012).

The *Rooker-Feldman* doctrine derives from two Supreme Court decisions interpreting 28 U.S.C. § 1257(a). *See District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). That statute provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the Supreme Court. The *Rooker-Feldman* doctrine is based on the negative inference that, if appellate court review of State judgments is vested in the Supreme Court, then such review may not occur in the lower federal courts. *Exxon Mobil*, 544 U.S. at 283–84; *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 308–11 (6th Cir. 2010); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

*Rooker-Feldman* is a doctrine with narrow application. It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298–99. It also does not address potential conflicts between federal and State court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion. *Berry*, 688 F.3d at 299. Instead, the *Rooker-Feldman* doctrine applies only where a party losing his case in State court initiates an action in federal district court complaining of injury caused by a State court judgment itself and seeks review and rejection of that judgment. *Berry*, 688 F.3d at 298–99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether *Rooker-Feldman* bars a claim, the Court must look to the "source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310. If the source of the plaintiff's injury is the State-court judgment itself, then the *Rooker-Feldman* doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third

12

party's actions, then the plaintiff asserts an independent claim." *Id.*; *see Lawrence*, 531 F.3d at 368–69. In conducting this inquiry, the court should also consider the plaintiff's requested relief. *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

In this case, the Campanas specifically ask the Court to "examine the judgment of 'judicial error'" (ECF No. 1, PageID #60) and "vacate the erroneous judgment" (*Id.*, PageID #59). The Court lacks subject matter jurisdiction to conduct such a review or grant that type of relief.

Finally, to the extent the Campanas seek to relitigate matters already decided in the State court, they are barred by the doctrine of *res judicata* from proceeding. The term "*res judicata*" literally means "a matter [already] judged." The doctrine of *res judicata* bars duplicative litigation based on the same event or events. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). When one court has already resolved the merits of a case, another court will not revisit them. *Id.* Therefore, the doctrine of *res judicata* precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of every issue actually brought before the first court and every issue or defense that should have been raised in the previous action. *Id.* *Res judicata* also bars Plaintiffs from relitigating in federal court claims and issues a State court previously decided. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).

Here, the State court determined the validity of the lien placed on the condominium in question. The State trial court considered Plaintiffs' argument that Waterford Pointe was required to accept their checks even with restrictive language and rejected it. The court concluded that Reserve's account was delinquent and granted judgment in favor of Waterford Pointe. The Campanas cannot now come to federal court and relitigate that issue in the hope of obtaining a different result. The Court must give full faith and credit to that State court judgment. *Res judicata* bars relitigation of those issues.

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Plaintiffs' motion to proceed *in forma pauperis* (ECF No. 2), **DENIES** Plaintiffs' motion for temporary restraining order (ECF No. 3), and **DISMISSES** this action pursuant to 28 U.S.C. § 1915(e). Pursuant to 28 U.S.C. § 1915(a)(3), the Court **CERTIFIES** that an appeal from this decision could not be taken in good faith.

**SO ORDERED.**

Dated: January 31, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio